1   **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8

9   Red River Resources, Inc.,              )   No. CV 11-02589-PHX-FJM
                                            )
10              Plaintiff,                   )   **ORDER**
                                            )
11  vs.                                     )
                                            )
12                                          )
    Mariner Systems, Inc.; XyberSecure, Inc.;)
13  Carlos Collazo; Julie Collazo; Neil M.  )
    Park;  Robert  A.  Ortalda,  Jr.;  Anabel)
14  Herrera; Mirto Collazo, Jr.; Rick Maharaj,)
                                            )
15              Defendants.                  )
                                            )
16  _____   )

17

18          We have before us defendants' motion to dismiss (doc. 26), plaintiff's response (doc.

19  30), defendants' reply (doc. 41), and defendants' request for judicial notice (doc. 42).

20  Defendants Neil M. Park, Robert A. Ortalda Jr., Anabel Herrera, Mirto Collazo Jr. ("Mirto"),

21  Rick Maharaj (collectively, "individual defendants"), Mariner Systems, Inc. ("Marsys"), and

22  Xybersecure, Inc. ("Xybersecure") move to dismiss for lack of personal jurisdiction and

23  failure to state a claim.  The individual defendants contend that we do not have personal

24  jurisdiction over them.  All moving defendants contend that plaintiff fails to state a claim

25  upon which relief can be granted.

26                                          **I**

27          Plaintiff Red River Resources, Inc. ("Red River") is owned by Karl Eller.  Defendant

28  Carlos Collazo is founder and chairman of Marsys.  He is also chairman and president of

XyberSecure, a subsidiary of Marsys. Defendants Park, Ortalda, Herrera, and Maharaj are officers and high-ranking employees of Marsys and XyberSecure. Mirto is a director of Marsys.

Eller met Carlos Collazo in July 2008. On October 17, 2008, Red River entered into a contract with Marsys (the "Marsys Agreement"), promising to invest $300,000 per month for 24 months for a total of $7.2 million. Collazo, on behalf of Marsys, promised that Marsys would match Red River's monthly investments and all of these funds would go towards the marketing and deployment of a mix of software services known as the MSS products. He also represented that plaintiff would receive a 24-month return of 200% secured by sales of the MSS products. Red River made its promised payments for 15 months, for a total investment of $4.5 million. Its last payment under the Marsys Agreement was in December 2009.

Collazo sent an email to Eller on March 26, 2009, in which he made several statements about the MSS products' revenue and margins, operating expenses, and a proposed acquisition. (Doc. 5, ex. I). Attached to this email were drafts of a growth strategy, revenue projections, and a business plan for XyberSecure. Defendants Ortalda, Park, and Maharaj were copied on the email.

On March 30, 2009, Red River entered into a second contract (the "WiPro Agreement") and agreed to invest $10 million with XyberSecure and Marsys to acquire software services and associated customer accounts from an unidentified business unit of WiPro Ltd. Marsys promised to make a matching $10 million investment to acquire these assets. Collazo told Eller that plaintiff's investment would be fully secured by revenue generated from sales of a XyberSecure product known as XyberShield. Marsys also executed a promissory note at the same time. Under this note, XyberSecure and Marsys promised to pay plaintiff $10 million with interest at 5% per year in installments beginning April 15, 2010. (Doc. 6, ex. N). Red River made its $10 million investment by May 31, 2009.

On March 29, 2010, Red River demanded rescission of the Marsys and WiPro

1   Agreements.  Red River, Marsys, and Collazo entered into a tolling agreement, effective

2   March 29, 2010, and extending through July 15, 2012, under which the tolling period was

3   not included in statute of limitations calculations.  Plaintiff filed this complaint on December

4   29, 2011.

5        Plaintiff asserts that its investments were fraudulently induced and defendants

6   concealed information, made false statements, and breached the agreements.  Plaintiff alleges

7   fourteen causes of action: violation of § 10(b) of the Securities Exchange Act of 1934 ("1934

8   Act") and Rule 10b-5, violation of § 20(a) of the 1934 Act, primary liability under A.R.S. §§

9   44-1991 and 44-2003(A), statutory control liability under A.R.S. § 44-1999(B), common law

10  fraud/concealment/fraudulent inducement, negligent misrepresentation, nondisclosure,

11  consumer fraud under A.R.S. § 44-1521, breach of contract of the Marsys Agreement, breach

12  of contract of the WiPro Agreement, breach of contract of the promissory note, breach of the

13  duty of good faith and fair dealing, fraudulent transfer and constructive trust, and accounting.

14                                                **II**

15       Defendants request judicial notice of plaintiff's opposition brief and proposed order

16  filed in Collazo's bankruptcy proceeding.  (Doc. 42).  Judicial notice may be taken of a fact

17  if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be

18  accurately and readily determined from sources whose accuracy cannot reasonably be

19  questioned."  Rule 201(b), Fed. R. Evid.  We take notice of the documents themselves, but

20  do not assume that the facts alleged therein are true.  See MGIC Indem. Corp. v. Weisman,

21  803 F.2d 500, 504 (9th Cir. 1986) (taking judicial notice of a motion to dismiss filed in

22  another case because it is a matter of public record); 21B Charles Alan Wright et al., Federal

23  Practice and Procedure: Evidence § 5106.4 (2d ed.).

24                                               **III**

25       The individual defendants move for dismissal under Rule 12(b)(2), Fed. R. Civ. P.

26  An action to enforce any liability or duty created under the 1934 Act may be brought in the

27  district where any act or transaction constituting the violation occurred, and process "may

28  be served in any other district of which the defendant is an inhabitant or wherever the

1    defendant may be found."  15 U.S.C. § 78aa; Sec. Investor Protection Corp. v. Vigman, 764

2    F.2d 1309, 1314 (9th Cir. 1985).  Because 15 U.S.C. § 78aa authorizes nationwide service

3    of process, the question is whether a defendant has minimum contacts with the United States.

4    Vigman, 764 F.2d at 1315-16.  Here, each of the individual defendants is a United States

5    resident, satisfying the minimum contacts test.

6         "If the suit is to enforce a liability created by the Securities Act, the court has

7    jurisdiction of the defendant wherever he may be found."  San Mateo Cnty. Transit Dist. v.

8    Dearman, Fitzgerald & Roberts, Inc., 979 F.2d 1356, 1358 (9th Cir. 1992).  Unless plaintiff

9    fails to make a non-frivolous allegation of liability under the Act, we should find that

10   personal jurisdiction exists. Id. ("[P]laintiff made a colorable showing that [defendant] might

11   be liable" and therefore the case was not "so frivolous that the court should anticipate the

12   result of a trial and find that no jurisdiction exists.").  Plaintiff has alleged a colorable claim

13   against the individual defendants.  As a result, we have personal jurisdiction.

**IV**

15        When considering a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., "a

16   court must construe the complaint in the light most favorable to the plaintiff and must accept

17   all well-pleaded factual allegations as true." Shwarz v. United States, 234 F.3d 428, 435 (9th

18   Cir. 2000).  On the other hand, a court is "not bound to accept as true a legal conclusion

19   couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

20   1955, 1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944

21   (1986)).

22        To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

23   "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 127 S. Ct. at

24   1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

25   the court to draw the reasonable inference that the defendant is liable for the misconduct

26   alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Dismissal

27   under Rule 12(b)(6) may be "based on the lack of a cognizable legal theory or the absence

28   of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police

1  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

2        "At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5

3  must satisfy the dual pleading requirements" of Rule 9(b), Fed. R. Civ. P., and the Private

4  Securities Litigation Reform Act of 1995 ("PSLRA").  Zucco Partners, LLC v. Digimarc

5  Corp., 552 F.3d 981, 990 (9th Cir. 2009).   Under Rule 9(b)'s heightened pleading

6  requirement, "a party must state with particularity the circumstances constituting fraud."

7  This standard is satisfied if a pleading identifies "the who, what, when, where, and how of

8  the misconduct charged, as well as what is false or misleading about the purportedly

9  fraudulent statement, and why it is false."  Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d

10  1047, 1055 (9th Cir. 2011) (internal quotation marks and brackets omitted).

11        The PSLRA requires "that a complaint plead with particularity both falsity and

12  scienter."  Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001).  A complaint must "specify

13  each statement alleged to have been misleading, [and] the reason or reasons why the

14  statement is misleading."  15 U.S.C. § 78u-4(b)(1). The complaint must also "state with

15  particularity facts giving rise to a strong inference that the defendant acted with the required

16  state of mind."  15 U.S.C. § 78u-4(b)(2).  To qualify as "strong" under this statute, "an

17  inference of scienter must be more than merely plausible or reasonable – it must be cogent

18  and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, Inc.

19  v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314, 127 S. Ct. 2499, 2504-05 (2007).

20  **V**

21        Plaintiff alleges four causes of action against Herrera and Mirto – violation of § 20(a)

22  of the 1934 Act, violation of A.R.S. § 44-1999, fraudulent transfer and constructive trust, and

23  accounting.  But not a single factual allegation has been pled against Herrera.  Very few facts

24  relate to Mirto and none of them show any indicia of control, as required for claims under

25  § 20(a) and § 44-1999.  Plaintiff fails to state a claim for constructive trust or accounting

26  against any defendant, see infra §§ XVIII-XIX.  Claims against Herrera and Mirto are not

27  facially plausible because the complaint fails to plead factual content that allows us to draw

28  the reasonable inference that these defendants are liable for the misconduct alleged.

1    Therefore, we conclude that plaintiff has failed to state a claim against Herrera or Mirto.

2                                          **VI**

3        A § 10(b) claim "may be brought not later than the earlier of– (1) 2 years after the

4    discovery of the facts constituting the violation; or (2) 5 years after such violation."  28

5    U.S.C. § 1658(b).  "'[D]iscovery' as used in this statute encompasses not only those facts the

6    plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have

7    known."  Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784, 1796 (2010).  "[T]he ultimate

8    burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have

9    *discovered* the facts constituting the violation."  Strategic Diversity, Inc. v. Alchemix Corp.,

10   666 F.3d 1197, 1206 (9th Cir. 2012) (emphasis in original).  "[F]acts showing scienter are

11   among those that 'constitut[e] the violation.'"  Merck, 130 S. Ct. at 1796.

12       The false statements forming the basis of the complaint occurred on or shortly before

13   October 13, 2008 and through at least March 2009.  Plaintiff claims to have recently

14   discovered the facts underlying its causes of action when former employees of Marsys

15   informed it of defendants' fraudulent statements.  Plaintiff states that it communicated with

16   these employees "[l]ate last year," in 2011.  (Doc. 30 at 3).  It claims the truth was still

17   unknown on December 28, 2009, when it made its last payment under the Marsys

18   Agreement, and in March 2010, when plaintiff's counsel wrote a letter to defendants

19   expressing his client's frustration at not receiving material information.  The letter complains

20   of an "information gap and failure to meet expectations," refusals to supply requested data,

21   and information being "withheld or slowly revealed," but does not indicate that plaintiff

22   believed defendants acted with an intent to deceive.  (Doc. 6, ex. Q at 1-2).

23       Defendants claim plaintiff was on inquiry notice as early as October 17, 2008, and

24   therefore its claims are time barred.  But "the 'discovery' of facts that put a plaintiff on

25   'inquiry notice' does not automatically begin the running of the limitations period."  Merck,

26   130 S. Ct. at 1798.  Instead, defendants have the burden of demonstrating that plaintiff, with

27   reasonable diligence, would have discovered the facts constituting the violation once on

28   inquiry notice.  Id. at 1799.  Defendants have not met their burden because they have not

1   demonstrated how plaintiff would have discovered their allegedly intentional

2   misrepresentations.  Strategic Diversity, 666 F.3d at 1206.  Plaintiff's claims are not time

3   barred.

4                                          **VII**

5          Section 10(b) of the 1934 Act forbids the use of "any manipulative or deceptive device

6   or contrivance in contravention of such rules and regulations as the [Securities and

7   Exchange] Commission may prescribe as necessary or appropriate in the public interest or

8   for the protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5 implements § 10(b) by

9   declaring it unlawful, in connection with the purchase or sale of any security:

10         (a) To employ any device, scheme, or artifice to defraud,

11         (b) To make any untrue statement of a material fact or to omit to state a
           material fact necessary in order to make the statements made, in the light of the
12         circumstances under which they were made, not misleading, or

13         (c) To engage in any act, practice, or course of business which operates or
           would operate as a fraud or deceit upon any person[.]

14
15   17 C.F.R. § 240.10b-5.

16         The elements of a Rule 10b-5 claim are "(1) a material misrepresentation or omission

17   by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission

18   and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

19   (5) economic loss; and (6) loss causation."  Stoneridge Inv. Partners, LLC v. Scientific-

20   Atlanta, Inc., 552 U.S. 148, 157, 128 S. Ct. 761, 768 (2008).  Defendants contend that

21   plaintiff fails to allege misrepresentations by defendants Park, Ortalda, and Maharaj,

22   justifiable reliance, economic loss, or loss causation.  Defendants do not challenge plaintiff's

23   characterization of the Marsys Agreement and WiPro Agreement as securities, or the

24   elements of scienter and transaction causation.

25         Plaintiff quotes all of Rule 10b-5 in its complaint, but only alleges facts to support a

26   violation under 10b-5(b).  "A defendant may only be liable as part of a fraudulent scheme

27   based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme

28   also encompasses conduct beyond those misrepresentations or omissions."  WPP

1    Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1057 (9th Cir. 2011).

2    Plaintiff has not alleged facts supporting a theory of liability under either Rule 10b-5(a) or

3    (c).

4         Rule 10b-5(b) makes it unlawful for a person to "make any untrue statement of a

5    material fact."  This provision has been narrowly construed by the Supreme Court:

6              For purposes of Rule 10b-5, the maker of a statement is the person or
         entity with ultimate authority over the statement, including its content and
7        whether and how to communicate it.  Without control, a person or entity can
         merely suggest what to say, not "make" a statement in its own right.  One who
8        prepares or publishes a statement on behalf of another is not its maker.

9    Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302 (2011).

10   Defendants Park, Ortalda, and Maharaj contend that plaintiff's complaint fails to allege they

11   "made" any misrepresentations for purposes of Rule 10b-5(b) liability.

12        In Janus, shareholders of a mutual fund investment adviser brought a 10b-5 action

13   based on false statements included in its client mutual funds' prospectuses.  Id. at 2299.  The

14   adviser was a wholly owned subsidiary of the same company which created the mutual funds.

15   The funds were organized as a business trust, a separate legal entity owned entirely by

16   mutual fund investors.   The two entities maintained corporate formalities and legal

17   independence.  Nothing on the face of the prospectuses indicated that any statements came

18   from the adviser rather than the trust.  While the plaintiff alleged that the adviser was

19   significantly involved in preparing the prospectuses, this assistance was still subject to the

20   trust's ultimate control.  The Supreme Court held that the adviser was not liable under Rule

21   10b-5 because it did not "make" the statements in the prospectuses.  Id.

22        The holding in Janus is not explicitly limited to its facts.  Although the case involved

23   two distinct legal entities, courts have applied Janus to corporate insiders.  See, e.g., Haw.

24   Ironworkers Annuity Trust Fund v. Cole, No. 3:10CV371, 2011 WL 3862206, at *3 (N.D.

25   Ohio Sept. 1, 2011); Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v.

26   Regions Fin. Corp., No. CV: 10-2847-IPJ, 2011 U.S. Dist. LEXIS 93873, at *3 (N.D. Ala.

27   Aug. 23, 2011).  Accordingly, plaintiff must meet the standard of Janus to state a 10b-5 claim

28   against the officers here.

Neil Park is secretary and general counsel of Marsys and XyberSecure.  In a direct email to plaintiff's counsel on March 20, 2009, Park stated that "Marsys has wrested this opportunity [the WiPro transaction] from an established company and in the process defeated several competitors including a public company."  Compl. ¶ 77.  According to plaintiff, this statement was false and materially misleading, as no other companies were competing for the acquisition of the WiPro assets.  Compl. ¶ 79.  As a result, Park represented the transaction as more desirable than it actually was.  Because Park had "ultimate authority" over this alleged misstatement, plaintiff has adequately asserted a 10b-5 claim against him.

Robert Ortalda is chief financial officer of Marsys and XyberSecure.  Plaintiff alleges that Ortalda used unsubstantiated numbers for revenue and costs when he prepared financial statements to show to Red River.  The numbers were purportedly provided by Collazo and Maharaj and, although Ortalda asked for an explanation of the calculations, he was not provided with one.  He used the numbers because "he was concerned that he would lose his job if he refused to include" them.  Compl. ¶ 148.  As currently pled, because he did not have ultimate authority over the content of the financial statements, the complaint does not state a claim against Ortalda under Rule 10b-5.  See Haw. Ironworkers, 2011 WL 3862206, at *5 (finding defendants did not have ultimate authority where plaintiff asserted that, to meet the demands imposed by the company's CEO and CFO and "ensure their continued employment, defendants improperly manipulated" data).

Rick Maharaj is chief technology officer of Marsys.  Plaintiff alleges that he and Collazo "calculated and adjusted key numbers" for financial statements given to Red River.  Compl. ¶ 148.  Plaintiff also alleges that he had "direct involvement in the preparation" of false and misleading revenue projections and a business plan.  Compl. ¶¶ 103, 107.  Construing the allegations in the light most favorable to plaintiff, the surrounding circumstances provide strong evidence that these untrue statements could be attributed to Maharaj.  See Janus, 131 S. Ct. at 2302 ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by–and only by–the party to whom it is attributed.");  In re Stillwater Capital Partners Inc. Litig., No. 1:11-2275

(SAS), 2012 WL 1116421, at *11 (S.D.N.Y. Apr. 3, 2012) (where plaintiff alleged company had a small number of employees and a single business purpose, court found adequate surrounding circumstances from which a reasonable fact finder could conclude statements were implicitly attributed to officers).  Plaintiff has adequately pled that Maharaj made untrue statements of material fact sufficient to avoid dismissal under Rule 12(b)(6).

"Under Rule 10b-5(b), a defendant can be liable for the omission of material information if he or she has a duty to disclose that information." Spot Runner, 655 F.3d at 1048. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17, 108 S. Ct. 978, 987 n.17 (1988).  A defendant who knows of a false statement owes "no duty of disclosure . . . absent a fiduciary or agency relationship, prior dealings, or circumstances such that [the plaintiff] has placed trust and confidence" in the defendant. Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1157 (9th Cir. 1996) (quotation omitted).  Here, no fiduciary or agency relationship is alleged, or other close relationship of trust and confidence between plaintiff and moving defendants. As currently pled, the relationship between plaintiff and moving defendants does not rise to the level where defendants would have assumed a duty to disclose.  Without such a duty, plaintiff has not stated an omission claim under Rule 10b-5.

Defendants argue that plaintiff has not adequately pled the element of economic loss, but this is contradicted by the complaint.  Plaintiff was promised that, in exchange for its investment in the Marsys Agreement, it would receive a 24-month return of 200%. Compl. ¶ 20.  Plaintiff was also promised that, in connection with the WiPro Agreement, its $10 million "capital outlay and return will be satisfied in Year 2." Compl. ¶¶ 102, 104. "Neither Marsys nor XyberSecure has ever provided any distribution to Red River on its investments under either the Marsys Agreement or the WiPro Agreement." Compl. ¶ 134.  Plaintiff has lost both its initial investments and their promised returns.  Taking these allegations as true, plaintiff satisfies the requirement of economic loss for a securities fraud claim.

The plaintiff has the burden of proving that defendants' unlawful act or omission "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4);

- 10 -

1    see also Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342, 125 S. Ct. 1627, 1631 (2005) (loss

2    causation is "a causal connection between the material misrepresentation and the loss."). "In

3    privately held companies, plaintiffs more commonly prove loss by showing that a

4    misrepresentation or omission caused him or her to engage in a transaction and that the

5    revelation of the truth is directly related to the economic loss alleged." Spot Runner, 655

6    F.3d at 1053.  In a case involving the sale of privately traded stock, the Ninth Circuit found

7    loss causation sufficiently alleged when plaintiff asserted that it would not have purchased

8    the security but for the misrepresentation and defendants' misrepresentation was causally

9    related to plaintiff's actual economic loss.  Livid Holdings Ltd. v. Salomon Smith Barney,

10   Inc., 416 F.3d 940, 949 (9th Cir. 2005).  Plaintiff has made such an assertion here.  Compl.

11   ¶ 163 (plaintiff would not have invested in the Marsys Agreement or WiPro Agreement if

12   it had known that the  investment opportunity was artificially inflated by defendants'

13   misstatements).  Plaintiff has adequately pled loss causation.

14          Defendants challenge plaintiff's allegation that it justifiably relied on any alleged

15   misstatements.  Justifiable reliance is a "less demanding" standard than reasonable reliance.

16   Field v. Mans, 516 U.S. 59, 61, 116 S. Ct. 437, 439 (1995).  "[A] person is justified in relying

17   on a representation of fact 'although he might have ascertained the falsity of the

18   representation had he made an investigation.'" Id. at 70, 116 S. Ct. at 444.  A victim of a

19   misrepresentation must investigate only when "the facts should be apparent to one of his

20   knowledge and intelligence from a cursory glance, or he has discovered something which

21   should serve as a warning that he is being deceived." Id. at 71, 116 S. Ct. at 444.

22          Plaintiff invested millions of dollars in the Marsys Agreement without being

23   "provided with any of Marsys' financial statements or information about the design or

24   development of the MSS Products." Compl. ¶ 32.  Plaintiff similarly invested in the WiPro

25   Agreement without seeing "financial statements, product specifications, performance data,

26   or documents containing the deal points of the WiPro Acquisition or allocation of the funds

27   placed by Red River." Compl. ¶ 130.  Nevertheless, reliance need not be reasonable to be

28   justifiable.

1    Defendants do not argue that plaintiff should have been aware it was being deceived
2    or that a cursory glance at documents in its possession would have revealed
3    misrepresentations and omissions of material fact.  Nor do they contend that plaintiff knew
4    certain statements were false or their falsity should have been obvious to plaintiff.  Cf.
5    Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation
6    is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to
7    him.").  Plaintiff plausibly alleges that its reliance on defendants' misstatements was justified.
8         Defendants do not challenge the remaining elements of plaintiff's securities fraud
9    cause of action.  We conclude that plaintiff has plausibly stated a claim for violation of §
10   10(b) under Rule 10b-5(b).

11                                        **VIII**

12        In count two, plaintiff alleges a violation of § 20(a) of the 1934 Act against all
13   defendants. "Section 20(a) extends liability for violations of other provisions of the 1934 Act,
14   including § 10(b), to certain so-called 'controlling persons.'"  Desai v. Deutsche Bank Sec.
15   Ltd., 573 F.3d 931, 938 (9th Cir. 2009); 15 U.S.C. § 78t(a).  A controlling person is one who
16   "directly or indirectly controls any person liable for the violation."  SEC v. Todd, 642 F.3d
17   1207, 1223 (9th Cir. 2011).  To state a prima facie case, plaintiff must prove a primary
18   violation of federal securities laws and "that the defendant exercised actual power or control
19   over the primary violator."  Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir.
20   2000).  Whether a party is a controlling person "is an intensely factual question."  Arthur
21   Children's Trust v. Keim, 994 F.2d 1390, 1396 (9th Cir. 1993).

22        Plaintiff's complaint alleges that Park, Ortalda, and Maharaj were controlling persons
23   of Marsys, and that Park and Ortalda were controlling persons of XyberSecure.  Plaintiff
24   asserts that, "[b]y virtue of their positions and their power to control public statements," these
25   defendants had the power and ability to control the actions of Marsys, XyberSecure, and their
26   employees.  Compl. ¶¶ 165-66.  Plaintiff then alleges that Marsys and XyberSecure
27   controlled the individual defendants.  This circular reasoning does not meet the standard of
28   a prima facie case.

1    Plaintiff fails to allege that individual defendants exercised "actual power or control"

2  over any controlled person.  Nor does plaintiff differentiate between defendants who are

3  primarily liable for securities violations and those who are secondarily liable based on their

4  control.  Plaintiff's conclusory allegations of "control person" status rest almost entirely on

5  defendants' executive positions.  "The fact that a person is a CEO or other high-ranking

6  officer within a company does not create a presumption that he or she is a 'controlling

7  person.'" Todd, 642 F.3d at 1223.  Whether a person is a controlling person involves

8  "scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the

9  defendant's power to control corporate actions." Kaplan v. Rose, 49 F.3d 1363, 1382 (9th

10  Cir. 1994).  As currently pled, plaintiff does not allege facts sufficient to state a plausible

11  claim for liability under § 20(a).

12                                          **IX**

13    Plaintiff next alleges violations of state securities laws.  A.R.S. §§ 44-1991(A), 44-

14  2003.  When alleging a false statement or omission of material fact under Arizona securities

15  laws, "the complaint shall specify each alleged untrue statement or material omission and the

16  reason or reasons why the statement or omission is misleading or the omission is material."

17  A.R.S. § 44-2082(A).  Plaintiff's complaint meets this pleading standard.

18    A.R.S. § 44-1991(A) provides:

19    A.  It is a fraudulent practice and unlawful for a person, in connection with a
      transaction or transactions within or from this state involving an offer to sell
20    or buy securities, or a sale or purchase of securities . . . directly or indirectly
      to do any of the following:
21
      1. Employ any device, scheme or artifice to defraud.
22
      2. Make any untrue statement of material fact, or omit to state any material fact
23    necessary in order to make the statements made, in the light of the
      circumstances under which they were made, not misleading.
24
      3. Engage in any transaction, practice or course of business which operates or
25    would operate as a fraud or deceit.

26    A purchaser injured by a violation of § 44-1991 may bring a private action for

27  rescission or damages under § 44-2001.  Section 44-2003(A) extends the remedy of

28  rescission beyond the seller of the securities to persons "who made, participated in or induced

                                          - 13 -

the unlawful sale or purchase." A.R.S. § 44-2003(A); Grand v. Nacchio, 225 Ariz. 171, 174, 236 P.3d 398, 401 (2010).  A private action may lie against Marsys and XyberSecure as the sellers of securities under § 44-2001.  The individual defendants may be jointly and severally liable pursuant to § 44-2003.

Plaintiff has not sufficiently stated a claim for violation of § 44-1991(A)(1) or (3).  The complaint alleges no deceptive scheme or conduct beyond misrepresentations and omissions.  Cf. Facciola v. Greenberg Traurig LLP, No. CV-10-1025-PHX-FJM, 2012 WL 910379, at *4 (D. Ariz. Mar. 19, 2012) (plaintiffs alleged fraudulent scheme when one company raised money for another, allowing second company to hide its insolvency and continue the fraudulent sale of securities).

To permit liability under § 44-1991(A)(1) or (3) solely on the basis of misstatements and omissions would conflate the three subsections.  "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous[.]"  Hibbs v. Winn, 542 U.S. 88, 101, 124 S. Ct. 2276, 2286 (2004).  Under federal law, "manipulative conduct has always been distinct from actionable omissions."  Desai, 573 F.3d at 940.  Manipulative conduct must be distinct from omissions and misrepresentations under state law as well in order to give meaning to every provision of § 44-1991(A).  See Grand, 225 Ariz. at 175-76, 236 P.3d at 402-03 ("We ordinarily do not construe statutes so as to render portions of them superfluous.").  Federal courts reviewing the analogous provisions of Rule 10b-5 have decided that scheme liability or market manipulation claims under Rule 10b-5(a) or (c) must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b-5(b).  Public Pension Fund Group v. KV Pharm. Co., 679 F.3d 972, 987 (8th Cir. 2012); Spot Runner, 655 F.3d at 1057-58; Lentell v. Merrill Lynch & Co., 396 F.3d 161, 177 (2d Cir. 2005).  Plaintiff has not alleged facts supporting a claim that moving defendants employed any device, scheme, or artifice to defraud, or engaged in any transaction, practice or course of business which operates or would operate as a fraud or deceit.  Plaintiff has failed to state a claim under A.R.S. § 44-1991(A)(1) or (3) against the moving defendants.

Plaintiff has adequately pled that all moving defendants made at least one untrue

statement of material fact.  Park and Maharaj made untrue statements of material fact in connection with the sale of securities.  See Compl. ¶¶ 77, 103, 107, 148; supra § VII.  Ortalda also made untrue statements of fact under A.R.S. § 44-1991.  As the companies' chief financial officer, he prepared false financial statements in connection with the sale of securities to Red River.  While Janus limited liability under Rule 10b-5 to those with ultimate authority over a statement, Arizona has not defined "make" in § 44-1991(A)(2) in the same way.  Arizona "imposes only an affirmative duty not to mislead."  Aaron v. Fromkin, 196 Ariz. 224, 227, 994 P.2d 1039, 1042 (Ct. App. 2000).  "The speaker's knowledge of the falsity of the statements is not a required element to proving fraud under § 44-1991(A)(2)[.]"  Id.  Plaintiff alleges that Marsys made false and misleading statements in the Marsys Agreement and that XyberSecure made a false statement on its website.  Compl. ¶¶ 35-44, 47-48, 52-53, 117.  Plaintiff has stated a claim under § 44-1991(A)(2) against all moving defendants.

Lastly, defendants contend that plaintiff has not pled that they "participated in or induced" the sale of securities pursuant to A.R.S. § 44-2003.  Participate means "to take part in something" or "partake."  Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 21, 945 P.2d 317, 332 (Ct. App. 1996).  Conducting activities "tangentially related to and concurrent with [an] ongoing sale" is not enough to show that a defendant participated in the sale of securities.  Id.  Induce means to persuade or prevail.  Id.  Inducement requires some "purposeful persuasive effort."  Id. at 22, 945 P.2d at 333.  Liability for participating in or inducing a sale does not stretch to collateral actors, "remote from the transaction, who neither financially participate, nor promote or solicit the transaction, but merely provide information that contributes to a buyer or seller's decision to close the deal."  Id.  "The statute has but one exception, . . . which provides that '[no] person shall be deemed to have participated in any sale or purchase solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase.'"  Grand, 225 Ariz. at 174, 236 P.3d at 401 (quoting A.R.S. § 44-2003(A)).

Plaintiff has pled that individual defendants participated in or induced the unlawful

solicitation and sale of the securities.  Compl. ¶ 172.  Complaints asserting claims under §

44-2003(A) ordinarily need not engage in an analysis of whether a person should be

separately characterized as having participated in or induced the unlawful sale.  Grand, 225

Ariz. at 174, 236 P.3d at 401.  The well-pleaded factual allegations, taken as true, show that

defendants participated in or induced plaintiff's investment.  Park persuaded plaintiff to go

through with the WiPro transaction by making a misrepresentation and encouraging plaintiff

to invest without receiving all requested documentation.  Compl. ¶ 77.  Ortalda and Maharaj

prepared false and misleading documents such as financial statements and business plans for

Red River.  Compl. ¶¶ 103-04, 148.  Such activity was not simply within the ordinary course

of their professional capacity, but was designed to persuade plaintiff to invest.  Plaintiff has

stated a claim against Park, Ortalda, and Maharaj for violation of §§ 44-1991(A)(2) and 44-

2003.  Plaintiff has also stated a claim against Marsys and XyberSecure under §§ 44-

1991(A)(2) and 44-2001.

## X

Plaintiff alleges that defendants were controlling persons under A.R.S. §§ 44-1991(A)

and 44-1999(B), which provides:

> Every person who, directly or indirectly, controls any person liable for a
> violation of § 44-1991 or 44-1992 is liable jointly and severally with and to the
> same extent as the controlled person to any person to whom the controlled
> person is liable unless the controlling person acted in good faith and did not
> directly or indirectly induce the act underlying the action.

Plaintiff's allegations of control person liability are conclusory and insufficient to state a

cause of action for the same reasons discussed above regarding § 20(a) of the 1934 Act.  See

supra § VIII.

## XI

In counts five and seven, plaintiff alleges claims for common law fraud/concealment/

fraudulent inducement and nondisclosure.  We interpret the complaint as alleging causes of

action for fraud by misrepresentation, concealment, and nondisclosure.  See Wells Fargo

Bank v. Ariz. Laborers, Teamsters & Cement Masons, 201 Ariz. 474, 496 n.22, 38 P.3d 12,

34 n.22 (2002) ("[T]here are three distinct classes of fraud: misrepresentation, concealment,

and non-disclosure.").  The elements of common law fraud are:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

Nielson v. Flashberg, 101 Ariz. 335, 338-39, 419 P.2d 514, 517-18 (1966).

"[F]raudulent concealment is essentially the equivalent of fraud by a misrepresentation" but does not require plaintiff to establish that defendants had an affirmative duty to speak.  Wells Fargo, 201 Ariz. at 498 & n.24, 38 P.3d at 36 & n.24. Liability "requires knowledge of the false information and action by the defendant that intentionally prevented the plaintiff from finding the truth."  Id. at 496, 38 P.3d at 34.

Liability for nondisclosure "lies against '[o]ne who fails to disclose to another a fact . . . if, but only if, he is under a duty to the other . . . to disclose the matter in question.'"  Id. at 496 n.22, 38 P.3d at 34 n.22 (alterations in original).  In analyzing plaintiff's claim under Rule 10b-5, we determined that defendants did not have a duty to disclose.  See supra § VII. That reasoning applies here as well.  Plaintiff has not stated a claim for fraud based on nondisclosure.

Justifiable reliance is an essential element of fraud.  Linder v. Brown & Herrick, 189 Ariz. 398, 405, 943 P.2d 758, 765 (Ct. App. 1997).  As with the federal securities claims, a "person may rightfully rely upon a misrepresentation of fact even when he may have discovered the falsity of the statement by a simple investigation."  Dawson v. Withycombe, 216 Ariz. 84, 98, 163 P.3d 1034, 1048 (Ct. App. 2007).  Because we have already concluded that plaintiff had no duty to investigate, and that reliance need not be reasonable to be justified, we reject defendants' argument that the state law claims fail for lack of justifiable reliance.

Plaintiff alleges throughout the complaint that misrepresentations and acts of concealment were material to its investment decisions and caused pecuniary harm.  See, e.g., Compl. ¶¶ 29-30, 96, 105, 133 (concealment by Marsys); ¶¶ 87-88, 147 (false statements by Marsys); ¶ 117 (false statement by XyberSecure); ¶ 148 (false statements by Ortalda and

1   Maharaj); ¶¶ 77, 79 (false statement by Park); ¶ 84 (concealment by Park).  As currently

2   pled, plaintiff states facially plausible claims for fraud by misrepresentation against Marsys,

3   XyberSecure, Park, Ortalda, and Maharaj, and fraudulent concealment against Marsys and

4   Park.

5   **XII**

6        Negligent misrepresentation is committed when one gives false information to others

7   for guidance in their business transactions, the giver fails to exercise reasonable care in

8   communicating the information, and the recipient suffers pecuniary loss by justifiably relying

9   upon the information.  See St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co., 154 Ariz.

10   307, 312, 742 P.2d 808, 813 (1987).  A cause of action for negligent misrepresentation

11   requires an affirmative misrepresentation.  Frazier v. Sw. Sav. & Loan Ass'n, 134 Ariz. 12,

12   16, 653 P.2d 362, 366 (Ct. App. 1982).  Plaintiff has alleged that each of the moving

13   defendants made at least one affirmative misstatement.  Marsys claimed companies were

14   current customers, both in the Marsys Agreement and on its website, when they were not.

15   Compl. ¶¶ 27, 34-40.   Other provisions of the Marsys Agreement contained false

16   representations attributed to Marsys.  Compl. ¶¶ 41-44, 47-48, 52-53. XyberSecure made a

17   false statement when it listed an acquaintance of Eller's as a member of its advisory board.

18   Compl. ¶ 117.  Park made a false representation when he told Eller that Marsys beat out

19   several competitors for the WiPro accounts.  Compl. ¶¶ 77, 79.  Ortalda and Maharaj

20   supplied false information to plaintiff by using false and materially misleading numbers in

21   financial statements.  Compl. ¶¶ 147-48.

22        Plaintiff also pleads justifiable reliance and pecuniary loss. Defendants correctly point

23   out that plaintiff does not plead that they failed to "exercise reasonable care or competence."

24   Plaintiff does allege, however, that defendants disseminated false statements "which they

25   reasonably should have known were false or misleading."  Compl. ¶ 188.  Plaintiff has

26   plausibly stated a claim for negligent misrepresentation against defendants.

27   **XIII**

28        The Arizona Consumer Fraud Act "provide[s] an additional avenue of relief to those

aggrieved by securities act violations."  State ex rel. Corbin v. Pickrell, 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983).  Under this statute, "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise" is unlawful. A.R.S. § 44-1522(A).

"As a liability created by statute, a consumer fraud action must be initiated within one year after the cause of action accrues."  Alaface v. Nat'l Inv. Co., 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (Ct. App. 1994) (citing A.R.S. § 12-541(3)).  The statute of limitations "begin[s] running when the defrauded party discovers or with reasonable diligence could have discovered the fraud."  Mister Donut of Am., Inc. v. Harris, 150 Ariz. 321, 323, 723 P.2d 670, 672 (1986).  "The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."  Silva v. Menderson, 41 Ariz. 258, 262, 17 P.2d 809, 810 (1933).

Plaintiff filed its complaint on December 29, 2011.  As a result, if plaintiff discovered or with reasonable diligence could have discovered the fraud before December 29, 2010, the statute of limitations has run on this claim.  Plaintiff repeatedly requested financial statements from defendants, but they refused to share records and the limited accounting provided was purportedly inaccurate. Compl. ¶ 135, 139. Plaintiff stopped making payments under the Marsys Agreement in January 2010, demanded rescission of the contracts in March 2010, and repeated the demand for rescission in November 2010.  The demand for rescission was based upon unsatisfied requests for information and failure to meet performance expectations.  (Doc. 6, ex. Q).  Plaintiff contends it did not know of defendants' intent to deceive until late in 2011 and therefore could not have discovered the misrepresentations until then. (Doc. 30 at 3).  Under these circumstances, there is evidence that plaintiff, acting with reasonable diligence, could not have discovered defendants' fraud before December 29, 2010.  Plaintiff has stated a plausible claim for consumer fraud.

**XIV**

1    Plaintiff alleges that Marsys breached the Marsys Agreement, which is governed by
2    California law.  In California, "the elements of a cause of action for breach of contract are
3    (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance,
4    (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis West Realty,
5    LLC v. Goldman, 51 Cal.4th 811, 821, 250 P.3d 1115, 1121 (2011).  Marsys contends that
6    plaintiff failed to perform under this agreement and thus cannot state a claim.  Plaintiff
7    admits that it has not fully performed its obligations, but argues that its nonperformance is
8    excused by defendant's nonperformance.  "Breach or repudiation of a contract by one party
9    excuses nonperformance by the other."  Cox v. Ocean View Hotel Corp., 533 F.3d 1114,
10   1121 (9th Cir. 2008) (applying California law); see also Wiz Tech., Inc. v. Coopers &
11   Lybrand LLP, 106 Cal. App. 4th 1, 12, 130 Cal. Rptr. 2d 263, 271 (Ct. App. 2003) ("[T]he
12   breach of an important condition may excuse the other party from performance.").  Plaintiff
13   has stated a claim against Marsys for breach of the Marsys Agreement.

14                                      **XV**

15   Plaintiff alleges that Marsys and XyberSecure breached § 2.1 of the WiPro
16   Agreement, which is governed by Arizona law.  To establish a prima facie case, plaintiff
17   must establish the existence of a contract, its breach, and resulting damages.  Clark v.
18   Compania Ganadera de Cananea, S.A., 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963).

19   Defendants contend that plaintiff has failed to state a claim because it did not
20   specifically allege that Marsys failed to use its best business efforts to acquire all assets.
21   (Doc. 6, ex. M § 2.1).  While the complaint does not quote the best efforts clause, it is
22   specific enough to notify defendant of plaintiff's claim that defendant breached § 2.1 of the
23   contract.  The issue remains whether Marsys used its best efforts to acquire all assets.
24   Plaintiff has sufficiently pled a breach of § 2.1 of the WiPro Agreement.

25   The WiPro Agreement also provides for return of plaintiff's investment if Marsys was
26   "unsuccessful in acquiring the Ohio Assets within 90 days after the Effective Date [defined
27   as March 30, 2009]."  Compl. ¶ 214.  Plaintiff alleges that the WiPro acquisition did not close
28   until on or about August 1, 2009 and thus has stated a claim.  Compl. ¶ 106.

1   Under the Marsys Agreement, Marsys promised to "maintain complete and accurate

2   accounts for the MSS Service [and] provide Eller and Red River with periodic reports

3   reflecting such matters commencing March 31, 2009" and every quarter thereafter during the

4   term of the contract. (Doc. 5, ex. B § 2.2).  The WiPro Agreement incorporates this provision

5   and provides that these reporting obligations "shall continue until the Secured Promissory

6   Note is paid in full."  (Doc. 6, ex. M § 2.6).  Plaintiff alleges that Marsys breached this

7   provision by failing to provide a complete and accurate accounting.  Plaintiff has plausibly

8   alleged that Marsys breached § 2.6 of the WiPro Agreement.

9   Construing all facts and inferences as true, plaintiff has sufficiently stated a plausible

10  breach of contract claim against Marsys based on the Marsys and WiPro Agreements.

11  Plaintiff does not allege that XyberSecure breached its obligations under the WiPro

12  Agreement and has not stated a claim for breach of contract against this defendant.

**XVI**

14  Count eleven alleges breach of the promissory note signed at the time of the WiPro

15  Agreement.  XyberSecure and Marsys promised to repay plaintiff's investment with interest

16  beginning in April 2010 but have not made any payments.  Plaintiff alleges that XyberSecure

17  breached this provision by failing to make payments.  The note provides that "[i]n the event

18  such proceeds[, from the sale of XyberShield and sale of MSS products,] are not realized

19  within any calendar quarter, no payments shall be due to Lender for such quarter." (Doc. 6,

20  ex. N).  Defendants rely on this provision to justify their failure to make payments under the

21  promissory note.  This may be a viable defense for defendant XyberSecure but at this early

22  stage plaintiff has stated a claim against XyberSecure for breach of the promissory note by

23  pleading the essential elements.

24  Plaintiff contends that both parties have breached the note because events of default

25  occurred and therefore the total unpaid balance is immediately due and payable, with interest,

26  but neither party has paid.  Plaintiff asserts that Marsys and XyberSecure are insolvent

27  because their liabilities have exceeded their assets and/or they have failed to pay their

28  obligations as they become due.  Plaintiff also asserts that defendants have breached their

1   accounting requirements and the breach has remained uncured after written notice.  Both of

2   these contingencies are events of default which trigger acceleration of the note.  Plaintiff has

3   plausibly pled that defendants breached these provisions of the promissory note.

4                                                          **XVII**

5          Plaintiff alleges that Marsys breached the covenant of good faith and fair dealing

6   under the Marsys Agreement.  California recognizes "an implied covenant of good faith and

7   fair dealing in every contract that neither party will do anything which will injure the right

8   of the other to receive the benefits of the agreement."  Foley v. Interactive Data Corp., 47

9   Cal.3d 654, 684, 765 P.2d 373, 390 (1988) (citation omitted).  The elements of this cause of

10  action include a contract, plaintiff's performance, defendant's unfair interference with the

11  plaintiff's right to receive benefits of the contract, and plaintiff's ensuing harm.  Rosenfeld

12  v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  Plaintiff has

13  admittedly not fulfilled its obligations under the Marsys Agreement.  It pled that defendant

14  breached this contract and contends defendant's non-performance provides an excuse for

15  plaintiff's non-performance.  "The requirement of performance may be excused by the other

16  party's breach."  Loral Corp. v. Moyes, 174 Cal. App. 3d 268, 280, 219 Cal. Rptr. 836, 844

17  (Ct. App. 1985).  Plaintiff has sufficiently stated a claim for breach of the covenant of good

18  faith and fair dealing implied in the Marsys Agreement.

19         Plaintiff also alleges that Marsys and XyberSecure breached the covenant of good

20  faith and fair dealing implied in the WiPro Agreement.  Arizona "law implies a covenant of

21  good faith and fair dealing in every contract."  Rawlings v. Apodaca, 151 Ariz. 149, 153, 726

22  P.2d 565, 569 (1986).  "The duty of good faith extends beyond the written words of the

23  contract."  Wells Fargo, 201 Ariz. at 491, 38 P.3d at 29.  Red River has alleged facts that, if

24  true, show defendants prevented it "from receiving the benefits and entitlements of the

25  agreement."  Id. at 490, 38 P.3d at 28.  See, e.g., Compl. ¶¶ 133-34.  Plaintiff has stated a

26  claim for breach of the implied covenant of good faith and fair dealing under the WiPro

27  Agreement.

28                                                        **XVIII**

1    Plaintiff seeks a constructive trust on the assets it invested with defendants and on any

2    property which has increased in value by use of plaintiff's funds.  "A prerequisite to the

3    imposition of a constructive trust is the identification of a specific property, or res, in which

4    the claimant has an interest."  Amtitle Trust Co. v. Fitch, 25 Ariz. App. 182, 184, 541 P.2d

5    1166, 1168 (Ct. App. 1975).  "A general claim for money damages will not give rise to a

6    constructive trust."  Burch & Cracchiolo, P.A. v. Pugliani, 144 Ariz. 281, 286, 697 P.2d 674,

7    679 (1985).  Plaintiff's complaint does not identify a specific property and is essentially one

8    for monetary damages.  Plaintiff's request for a constructive trust is not supported by

9    applicable law.

10                                      **XIX**

11    Plaintiff seeks an accounting from all defendants, alleging that it "entrusted Marsys

12    and XyberSecure with over $15 million and is entitled to a complete and accurate accounting

13    to reveal their dealings with such funds."  Compl. ¶ 241.  To state a claim for an accounting,

14    plaintiff must show "the absence of an adequate remedy at law."  Dairy Queen, Inc. v. Wood,

15    369 U.S. 469, 478, 82 S. Ct. 894, 900 (1962).

16    Because plaintiff failed to allege it entrusted money with the individual defendants,

17    plaintiff fails to state a claim against them.  Plaintiff also fails to state a claim against Marsys

18    and XyberSecure because plaintiff may bring an action for breach of contract and has an

19    adequate remedy at law.  Plaintiff has not stated a claim for an accounting.

20                                      **XX**

21    **IT IS ORDERED DISMISSING** defendants Annabel Herrera and Mirto Collazo,

22    Jr.

23    **IT IS ORDERED GRANTING** in part and **DENYING** in part defendants' motion

24    to dismiss (doc. 26).  Defendants' motion is granted as to the following claims: all claims

25    pled against Herrera and Mirto; breach of § 10(b) of the 1934 Act under Rule 10b-5 by

26    Ortalda; breach of § 10(b) of the 1934 Act under Rule 10b-5(a) or (c), breach of § 20(a) of

27    the 1934 Act, breach of A.R.S. § 44-1991(A)(1) and (3), breach of A.R.S. § 44-1999(B),

28    nondisclosure, constructive trust, and accounting as to all moving defendants; concealment

by Ortalda, XyberSecure, and Maharaj; and breach of the WiPro Agreement by XyberSecure.

The following claims remain: breach of § 10(b) of the 1934 Act under Rule 10b-5(b) by Marsys, XyberSecure, Park, and Maharaj; breach of A.R.S. §§ 44-1991(A)(2) and 44-2001 or 44-2003, fraud by misrepresentation, negligent misrepresentation, and consumer fraud by Marsys, XyberSecure, Ortalda, Park, and Maharaj; fraudulent concealment by Marsys and Park; breach of contract by Marsys of the WiPro and Marsys Agreements; breach of the promissory note by XyberSecure and Marsys; and breach of good faith and fair dealing by Marsys and XyberSecure.

DATED this 28th day of June, 2012.

_Frederick J. Martone_

Frederick J. Martone
United States District Judge